AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States of America
v.

Patrick CURRY
COB: US
1980

*Defendant(s)*

Case No. 7:26-mj-3504

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of June 21, 2021 - May 22, 2024 in the county of Hidalgo in the Southern District of Texas, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC 1956(h) | Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

See Attachment A

☒ Continued on the attached sheet.

Approved by AUSA Roberto Lopez, Jr.

/S/ Nicholas Stott
*Complainant's signature*

Nicholas Stott, HSI Special Agent
*Printed name and title*

■ Sworn to telephonically and signed electronically per Fed.R.Cr.4.1

Date: *10/19/26 @ 7:37 p.m.*

*Judge's signature*

City and state: McAllen, Texas

Hon. Juan F. Alanis, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

I, Nicholas C. Stott, am a Special Agent of the United States Homeland Security Investigations (HSI) and have knowledge of the following facts. The facts related in this attachment do not reflect the totality of information known to me or other agents/officers, merely the amount needed to establish probable cause. I do not rely upon facts not set forth herein in reaching my conclusion that a complaint should be issued, nor do I request that this Court rely upon any facts not set forth herein in reviewing this attachment in support of the complaint.

1. In 2026, Homeland Security Investigation ("HSI") and Internal Revenue Service Criminal Investigation Agents ("IRS-CI") interviewed an individual (hereinafter "Individual A") as part of an investigation.

2. During an initial interview, Individual A admitted to providing log in credentials to a sports betting website to an individual (hereinafter "the Bettor") to be utilized for placing sports related bets. Individual A stated that when the Bettor would lose, the bettor would send payments through an intermediary (hereinafter "the Intermediary") to Patrick CURRY. Individual A stated that he would then subsequently receive payment from CURRY less a percentage retained by the Intermediary and CURRY.

3. Agents have obtained financial records associated with CURRY and McAllen Gold and Silver. A review of the financial records show that the Bettor and/or a business operated by the Bettor paid over $750,000 in checks to either CURRY or McAllen Gold and Silver from August 25, 2021 through May 22, 2024, including checks that correspond to messages about gambling payments previously referenced. Search warrants executed at McAllen Gold and Silver and other documents obtained during the investigation have revealed invoices documenting most of the transactions as being for alleged precious metals or jewelry related transactions. However, CURRY's tax return filings are inconsistent with the gross revenue alleged to have been received from said transactions. CURRY has operated McAllen Gold & Silver since the death of his father, WENDELL Curry (hereinafter "WENDELL"), in June of 2021.

4. Records obtained during the investigation show multiple text message exchanges between Individual A and the Intermediary.

5. One message thread between May 8, 2023 and June 5, 2023 discuss a series of payments. Within the thread, Individual A states "Total for me 124,865" on May 16, 2023, which was followed by "Does he has some paper? Or need to do checks, or what u think ?" Approximately thirty minutes later, the Intermediary responds "He can do some checks this week and next then paoer". Agents believe that "paoer" is an error that is meant to be paper, which is slang for U.S. currency. Individual A later provides instructions to make checks out to various entities in amounts of at least $40,000.00. The messages also discuss leaving payments with "Pat" which is a reference to CURRY, the placement of various sports bets, and pictures of ledgers that contain amounts owed.

6. Another message thread from July 26, 2023 through September 25, 2023 with a different number utilized by Individual A contains messages requesting payment of 30 or 35 to "the estate" and to drop off 10 to pay "Pat" "some stuff". The messages continue to provide ledgers of amounts owed, discussions of sports bets, payments to be made or delivered to "Pat", and requests for payments to other nominee names including "2 cashiers checks made out to a city here for 50k each" for "game room permits," which was subsequently identified as the city of Donna, Texas. The messages later discuss providing payments in checks and issuance of 1099s for the gambling debt payments to which Individual A responds "I'm making a consulting and investment llc rn so if he looses he can pay my llc every time and when he wins I'll pay him cash… that way its not a issue later , and I'll deal with the taxes".

7. A phone number utilized by Individual A was also found saved on CURRY's cellular phone. Agents have also obtained text messages between Individual A and CURRY in which Individual A provides CURRY with multiple sports betting websites and usernames and passwords that ostensibly could be utilized to place bets since at least June 11, 2021.

8. Individual A initially informed Agents that he resided in a residence ("RESIDENCE") that was inherited by his mother. In subsequent interviews, Individual A stated that he initially agreed to purchase the residence for $600,000.00 from WENDELL prior to his death in June of 2021. Individual A stated he paid WENDELL approximately $100,000.00 and then funded the remaining $500,000.00 in payments to CURRY through the gambling proceeds that were being delivered to CURRY by the Intermediary and on behalf of the Bettor. Individual A stated that the deed to the RESIDENCE was subsequently made out to his mother as the grantee of the RESIDENCE by CURRY on behalf of WENDELL's estate. Agents believe that these payments reflect the need to have payments made to "the estate" previously referenced.

9. According to court records, an application was filed for the probate of WENDELL's will and codicil in Hidalgo County, Texas on August 19, 2021. The will and codicil were executed on February 1, 2019 and July 8, 2019, respectively. The will and codicil named CURRY and his brother as co-executors of the will. According to paragraph 3.1 of the will the property was to be distributed among five of his children, including the two executors, or their descendants except for specific property to be provided to a separate individual referenced in the codicil. Neither the will or codicil reference the distribution of any property to Individual A or his family members.

10. In 2021, CURRY, as co-executor of WENDELL's estate, executed a warranty deed purporting to sell the RESIDENCE to Individual A's mother.

11. During an interview, Individual A's mother has denied paying any funds for the purchase of the RESIDENCE and stated she was informed by Individual A that she inherited it in connection with WENDELL's death and wishes.

12. During an interview with the other co-executor of the estate, the co-executor stated that CURRY primarily handled the distributions from WENDELL's estate and that he would

not have agreed to the distribution of the RESIDENCE for free if it was not specified in WENDELL's will.

13. Messages between CURRY and Individual A indicate that the RESIDENCE was listed with a realty company as of June 14, 2021 - seven days before WENDELL's death. Messages also show CURRY and Individual A providing information about the RESIDENCE and apparent payments. On June 21, 2021, CURRY sent Individual A a series of messages stating "My dad passed away this morning" followed by "Everything is still set and planned etc. Just wanna let you know" less than a minute later. Subsequent discussions show that Individual A was provided the key to the RESIDENCE by at least July 13, 2021 and was subsequently provided utility bills for the RESIDENCE by CURRY. Discussions also show CURRY and Individual A discussing monthly payments that need to be made.